**MALLORY-SHARON TITANIUM CORPORATION, Appellant, v. BOWERS, Tax Commr., Appellee.**

Board of Tax Appeals, Department of Taxation, State of Ohio.

No. 35171. Decided April 16, 1958.

William R. Hewitt, of Hoppe, Day & Ford, Warren, for appellant.
William Saxbe, Atty. Genl., by Gerald A. Donahue, John M. Tobing, Asst. Attys. Genl., for appellee.

## OPINION

This cause and matter came on to be considered by the board of tax

appeals upon a notice of appeal filed herein under date of August 28, 1957, by the appellant above named from a final order of the tax commissioner dated August 1, 1957, in and by which final order the tax commissioner denied appellant's application for review and redetermination of an increased personal property tax assessment theretofore made against appellant for the year 1956.

The cause was submitted to the board of tax appeals upon the notice of appeal, the statutory transcript furnished by the tax commissioner, the testimony and evidence presented to the Board of Tax Appeals at a hearing in Columbus, Ohio, on December 18, 1957, and the briefs supplied by counsel.

On March 22, 1951, the P. R. Mallory and Company, Inc., a Delaware corporation, hereinafter referred to as Mallory, and the Sharon Steel Corporation, a Pennsylvania corporation, hereinafter referred to as Sharon Steel, entered into a joint venture agreement for the purpose of developing titanium as a commercial production. This joint venture agreement has been made a part of the evidence in this case and is identified as appellant's Exhibit "B."

Prior to this arrangement Mallory had been engaged in research in the titanium field, and Sharon Steel had been engaged in the manufacture of steel. Under the joint venture agreement, Mallory furnished its basic titanium and research facilities and Sharon Steel furnished its Rolling Mills at Niles, Ohio. In addition, the appellant corporation (Mallory-Sharon Titanium Corporation, a Delaware corporation), hereinafter referred to as appellant, was formed to serve as general manager of the joint venture in co-ordinating purchases, production and sales. Under the agreement, the appellant was to receive a fee of $800.00 per month for acting as general manager and an additional sales commission of 5% from the joint venture. In forming the appellant corporation, Mallory and Sharon Steel each contributed about $50,000.00 and each became a one-half owner of the stock of appellant corporation. During the years prior to December of 1955, the appellant owned, on its own account, no assets other than cash, accounts receivable, and office equipment.

The joint venture agreement made in 1951 continued in effect until December 31, 1955, at which time the joint venture was liquidated by bookkeeping entries and the assets of the joint venture were turned over to appellant. Accordingly, on tax lien day for 1956, January 1, 1956, the joint venture which had filed personal property tax returns, as a manufacturer, for each of the years during its existence did not file a return. Instead, the appellant filed a personal property tax return in which it listed the assets which it had received from the joint venture. In this tax return the appellant returned the value of all inventories by twelve, even though it had held the inventories only "on the last business day" of one month during the calendar year 1955. The tax commissioner refused to accept this computation and he listed the manufacturing inventories for taxation at 50% of their book value as of December 31, 1955.

As indicated above the appellant, when it filed its Ohio 1956 personal

property tax return, listed under Schedule 3 of the return, certain manufacturing inventory claimed to be owned by it on December 31, 1955, and located in Weathersfield Township, Trumbull County, Ohio, as having a book value of $4,868,363.00. The appellant, apparently upon the assumption that it was a manufacturer during the calendar year 1955 and apparently upon the assumption that it was authorized to do so, then divided the $4,868,363.00 figure by twelve (months) to arrive at an average manufacturing inventory figure of $405,697.00. It then listed 50% of this last mentioned figure, or $202,850.00, for taxation at the local tax rate of $2.32 per thousand of valuation. The tax, thus computed, amounted to $4,706.12.

The tax commissioner, upon audit of appellant's return, found that appellant was not a manufacturer during the year 1955 and therefore was not authorized to divide the book value of its December 31, 1955, inventory by twelve to arrive at an average inventory valuation, nor was it authorized to divide the sum of the month ending inventories of the joint venture by twelve to arrive at an average inventory valuation. The tax commissioner held that appellant's manufacturing inventory had a book value of $4,868,363.00 on December 31, 1955, and that it should be listed for taxation for the year 1956 at 50% of this figure, or $2,434,-190.00. When the local tax rate of $2.32 per thousand of valuation is applied to this valuation the tax is $56,473.21, which figure is $51,767.09 more than the tax computed on appellant's return, as filed.

If the joint venture had still been in operation on January 1, 1956, and if it had filed a personal property tax return, the twelve-month average valuation of its manufacturing inventory for the year 1955 would have been $3,296,785.00 which would have been listed for taxation at 50% thereof, or $1,648,393.00, with a tax of $38,242.65.

The question which must be answered in this case may be stated as follows:

**What valuation should appellant have used in listing its manuacturing inventory for Ohio taxation for the year 1956?**

For a solution to the problem our attention has been directed to several sections of the Revised Code which regulate the listing of tangible personal property for taxation.

Sec. 5701.01 R. C., reads follows:

"As used in **Title LVII (57) R. C.,** 'person' includes firms, companies, associations, and corporations."

The pertinent portion of §5701.03 R. C., reads as follows:

"As used in **Title (57) R. C.,** 'personal property' includes every tangible thing which is the subject of ownership, whether animate or inanimate, * * *, and not forming part of a parcel of real property, * * *."

Sec. 5711.16 R. C., reads as follows:

"A person who purchases, receives, or holds personal property for the purpose of adding to its value by manufacturing, refining, rectifying, or combining different materials with a view of making a gain or profit by so doing is a manufacturer. When such person is required to return a statement of the amount of his personal property used in business, he shall include the average value, estimated as provided in this

section, of all articles purchased, received, or otherwise held for the purpose of being used, in whole or in part, in manufacturing, combining, rectifying, or refining, and of all articles which were at any time by him manufactured or changed in any way, either by combining, rectifying, refining, or adding thereto, which he has had on hand during the year next previous to listing day annually, or the part of the year during which he was engaged in such business. He shall separately list finished products not kept or stored at the place of manufacture or at a warehouse in the same county.

The average value of such property shall be ascertained by taking the value of all property subject to be listed on the average basis, owned by such manufacturer on the last business day of each month the manufacturer was engaged in business during the year, adding the monthly values together, and dividing the result by the number of months the manufacturer was engaged in such business during the year. The result shall be the average value to be listed. A manufacturer shall also list all engines and machinery, and tools and implements, of every kind used, or designed to be used, in refining and manufacturing, and owned or used by such manufacturer."

The pertinent portion of §5711.22 R. C., reads as follows:
"* * *.

Personal property, used in business, shall be listed and assessed at fifty per cent of its true value in money on the day that it is required to be listed or on the days or at the time that it is required to be estimated on the average basis as follows:

(A) * * *.

(1) The average value of all articles purchased, received or otherwise held by a manufacturer for the purpose of being used in manufacturing, combining, rectifying or refining;

(2) The average value of all articles which were at any time manufactured or changed in any way by the taxpayer, either by combining or rectifying, or refining or adding thereto, * * *."

Appellant, under the terms of the joint venture agreement, was appointed manager of the joint venture and from March 21, 1951, until December 31, 1955, appellant has operated, managed and co-ordinated all activities and operations of the joint venture including the conversion of sponge titanium into ingots, the forging and rolling of the ingots, all purchasing and sales activities including solicitation of business, preparation of quotations, prices, terms of sale, invoicing, delivery procedure, adjustments and correspondence with customers.

The actual physical production of titanium was carried on at the Niles Rolling Mill Division of Sharon Steel at Niles, Ohio. Appellant, in its own name, would purchase titanium sponge (the basic raw material) for the account of the joint venture. This titanium sponge, by means of melting, would be converted into pure titanium ingots which would then be rolled into sheets according to the specifications of customers. The delivery of the finished product and the billing and collection therefor was done in the name of appellant, for the account of the joint venture. In 1955 the conversion of titanium sponge into a finished

titanium product added approximately $15.00 per pound in value to the finished product. During the year 1955 there were twelve employees on the payroll of appellant. Ten of these were clerical or sales employees. F. H. Vandenburgh, vice-president and general manager of appellant, and B. R. Marquis were directly engaged in the production of titanium. Mr. Vandenburgh was in charge of all operations for manufacturing a finished titanium product. His offices were located in the manufacturing plant at Niles, Ohio, and his duties took him daily into the plant to supervise and direct the production of finished titanium product. In this capacity, although on the payroll of appellant, Mr. Vandenburgh was in charge of all employees engaged in the production of titanium, whether these employees were on the payroll of Sharon Steel or Mallory.

All research contracts for development of titanium and for more efficient production methods were entered into by appellant. In 1955 there were two contracts with Battelle Memorial Institute for research on melting and welding titanium and three contracts with the United States Navy and Air Force under which appellant conducted research upon the effects of heat, fatigue and impact on titanium. Patent applications were made in the name of and for the appellant.

On December 15, 1955, Mallory and Sharon Steel agreed to dissolve the joint venture as of December 31, 1955, and, as noted before, at midnight on that date the joint venture was dissolved and all assets including inventory and liabilities of the joint venture were transferred to appellant. All employees in the plant of the Rolling Mill Division of Sharon Steel became employees of appellant and appellant took over all the inventory of the joint venture. On January 3, 1956, manufacturing and office facilities of the Rolling Mill Division of Sharon Steel were transferred to appellant. The changeover was a paper transaction and there was no break in production, manufacturing or sales. Appellant continued to operate and manage the business as it had done before.

The board of tax appeals is of the view that if the word "manufacturer" as used in §§5711.16 and 5711.22 R. C., is given a liberal construction it must be concluded that appellant was a "manufacturer" during the year 1955. See **Eastern Machinery Co. v. Peck, 160 Oh St 144, 51 O. O. 57,** wherein the Supreme Court of Ohio at **page 148** used this language:

"The Board of Tax Appeals proceeded on the assumption that since the General Assembly, in enacting the statutes, granted manufacturers a 'preferential tax base' amounting to a partial tax exemption, the statutes should be strictly construed against the claim of a manufacturer or one engaged in manufacturing seeking the 50 per cent property valuation as a tax base. However, a study of the legislative history of these statutes tends to dispel that assumption and conclusion. These statutes were amended by the Eighty-ninth General Assembly by the enactment of Amended Senate Bill No. 323, pursuant to the recommendation of a committee expressly stating the purpose of the amendment to be 'to equalize the taxes of manufacture and agriculture, so that additional wealth may be developed in this state,' and to that end 'all appraisals (of tangible personal property) are to be made at seventy per cent of such value, except in the case of tools and machinery used in manufac-

turing and agriculture, in which case, to assist Ohio business in competition with other states, the rate is to be fifty per cent of such value.' "

Although the above noted case involved the question—what constitutes manufacturing?—and this appeal is concerned with the question—was appellant a manufacturer during the calendar year 1955?—we believe that if the same liberal interpretation given in the Eastern Machinery case is given to appellant in this case, there is no question but that appellant would qualify as a "manufacturer."

The process of converting raw titanium sponge by melting into a pure titanium ingot and the rolling and shaping of the ingot to meet specifications of customers is undoubtedly a manufacturing process and the organization, or organizations, that carried on this process must fall under the statutory definition of a "manufacturer."

Since it is clear that both a manufacturing and refining process was carried on by the joint venture the sole question ultimately comes down to whether the activities of the appellant were so closely identified and intermingled with this manufacturing and refining process as to permit a finding that both appellant and the joint venture carried on the manufacturing and refining activities during the year 1955.

There can be no question but that a successful manufacturing business is not limited to the conversion of property from one form to another. Such activity is but one part of the entire business and to be successful, it must have employees or persons dealing with purchasing, employment, labor relations, research, production, quality control, sales, delivery, billings and collections.

In the opinion of the Board of Tax Appeals the activities of appellant such as scheduling of production, quality control, regulation of plant hours and number of employees, increases in plant manufacturing capacity and reclamation of scrap were directly connected with the conversion of titanium sponge to a marketable titanium product. If these activities had been performed by the joint venture, there would be no question but that they were manufacturing activities. The fact that appellant assumed responsibility for them does not change their character.

We are convinced that both appellant and the joint venture were engaged in a necessary part of titanium manufacturing during the calendar year 1955 and, based upon this conclusion, and upon a finding that the manufacturing activities of the joint venture and appellant were so closely intermingled as to be almost incapable of separation, we find that the final order of the tax commissioner herein complained of must be, and hereby is, modified to the extent required by this conclusion.

We find that appellant, in its 1956 personal property tax return, should have listed the month-end manufacturing inventories of the joint venture for each of the months in the year 1955, and it should have divided the sum thereof by twelve to arrive at the value of its average monthly inventory. As thus computed this monthly average is $3,296,-785.00 and the tax listable value thereof is $1,648,393.00.

As thus modified the final order of the tax commissioner is affirmed.